**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | |
|---|---|
| JONATHAN ANDREW HART,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN ROBERT ADAMS, et al.,<br><br>Defendants. | CIVIL ACTION NO.: 6:24-cv-53 |

**ORDER AND REPORT AND RECOMMENDATION**

Defendants Adams, Carter, Laricy, and Taylor filed a Motion to Dismiss. Doc. 35. Plaintiff filed a Response. Doc. 48. Defendants filed a Reply. Doc. 51. Defendant Shawn Sikes filed a separate Motion to Dismiss. Doc. 50. Plaintiff filed a Response. Doc. 57. Defendant Sikes filed a Reply. Doc. 60. Plaintiff also filed a Motion for Leave to File Notice of Status Change. Doc. 63. I **GRANT** that Motion.

For the reasons stated below, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss and **DISMISS** Plaintiff's Amended Complaint in its entirety. Because I have recommended dismissal of all of Plaintiff's claims, I **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

**BACKGROUND**

Plaintiff brought suit under 42 U.S.C. § 1983, alleging that Defendants unlawfully tampered with his legal mail while he was incarcerated at Jenkins Correctional Center ("Jenkins"). Doc. 1. Plaintiff filed an Amended Complaint. Doc. 13. Plaintiff then filed a

Second Amended Complaint, which is the operative pleading. Doc. 17. The Court conducted frivolity review and ordered service of Plaintiff's claims against Defendants Adams, Sikes, Laricy, Taylor, and Carter. Doc. 19.

In the Second Amended Complaint, Plaintiff alleges that, on a series of occasions, prison officials tampered with his mail. Doc. 17. Plaintiff organizes these incidents by date as follows:

- On February 21, 2024, Plaintiff received mail from the State Bar of Georgia. The mail was stamped as arriving on February 14, 2024. Plaintiff alleges that Defendants unlawfully withheld the mail for a week. Id. at 4.
- On March 22, 2024, Plaintiff received a letter he originally sent to the Georgia Supreme Court. The letter had been returned marked "temporarily away." The letter had been opened and copied and the original had been thrown away. Id. at 5.
- On April 29, 2024, Plaintiff received a letter from a U.S. district court. The letter had been opened and copied, pages were missing, and the original had been thrown out. Id. at 6.
- On April 29, 2024, Plaintiff received a letter from Legal Aid Atlanta. The letter had been opened and copied, and the original had been thrown out. Id.
- On May 15, 2024, Plaintiff received a letter marked "legal documents" from Jennifer Hart, who he describes as "power of attorney, trustee, and secretary to estate and trust." The letter had been opened and copied and the original had been thrown out. Plaintiff states Jennifer Hart is his mother. Id. at 6, 9.
- On May 31, 2024, Plaintiff received a letter from Jennifer Hart. The letter had been opened and copied and the original had been thrown out. The envelope was marked "opened in error" and "came in opened." Id.
- On June 18, 2024, Plaintiff received a letter from Jennifer Hart marked "legal/confidential." The letter had been opened and copied and the original had been thrown out. Id. at 7.
- On June 24, 2024, Plaintiff received a letter from T. Rowe Price "in regards to a Freedom of Information Act request about state municipal bonds." The letter had been opened and copied and the original had been thrown out. Id.

- On July 1, 2025, Plaintiff received a letter from Jennifer Hart marked "legal/confidential." The letter had been opened and copied and the original had been thrown out. The envelope was marked "opened in error." Id.

- On July 25, 2024, Plaintiff received a letter from Jennifer Hart marked "legal/confidential." The letter had been opened and copied and the original had been thrown out. The envelope was marked "opened in error." Id. at 7–8.

- On August 13, 2024, Plaintiff received a letter from the United States General Services Administration. The letter had been opened and copied and the original had been thrown out. Id. at 8.

- On August 13, 2024, Plaintiff received a letter from Jennifer Hart. The letter had been opened and copied and the original had been thrown out. Id. at 8–9.

- On August 14, 2024, Plaintiff received a letter from the White County, Georgia clerk of court. The letter had been opened. The envelope was marked "opened in error." Id. at 9.

- On August 21, 2024, Plaintiff's outgoing mail to Jennifer Hart was mailed "after delay and tampering." Id. Plaintiff received a copy of the outgoing mail on August 27, 2024. The mail was marked "not legal address." Id. at 9–10.

- Between September 5, 2024 and March 18, 2025, Plaintiff received seven more letters from Jennifer Hart marked "legal documents." The letters were opened and copied and the originals were thrown out. Id. at 10.

- On April 17, 2025, Plaintiff received a letter from the Court. The letter had been opened and marked "opened by error." Id. at 11.

Plaintiff alleges he submitted a grievance regarding the February 21, 2024 State Bar incident. The grievance was approved. Id. at 4–5. Plaintiff submitted a grievance regarding the March 22, 2024 Supreme Court of Georgia incident. The grievance was denied, as was the subsequent appeal. Id. at 5. Plaintiff then submitted a grievance regarding the July 25, 2024 incident. The grievance was denied, as was the subsequent appeal. Id. at 8.

Plaintiff also alleges he is intimidated to further exhaust administrative remedies, stating that Defendant Sikes previously "transferred another inmate to a worse/unsafe prison for filing a

lawsuit." Id. at 10. In addition, "Warden Sidney Carter has also transferred an inmate as retaliation for a lawsuit." Plaintiff alleges that he is "forced to live in fear" as a result. Id. at 10.

As a result of these allegations, Plaintiff asserts the following claims: a First Amendment access-to-courts claim; a First Amendment free speech claim; a Fourth Amendment illegal search and seizure claim; a Sixth Amendment right to assistance of counsel claim; a Fourteenth Amendment due process claim; an Eighth Amendment cruel and unusual punishment claim; a Privacy Act claim; and a state law claim for emotional distress. Id. at 11–13. Plaintiff requests declaratory relief, injunctive relief, nominal damages, compensatory damages, and punitive damages. Id. at 13–15.

Defendants Adams, Carter, Laricy, and Taylor jointly filed the instant Motion to Dismiss, arguing that Plaintiff failed to exhaust administrative remedies as to some claims. Doc. 35. Defendants argue that for any exhausted claims, Plaintiff fails to state a claim for which relief can be granted. Id. Defendant Sikes separately filed a Motion to Dismiss, arguing that Plaintiff failed to exhaust administrative remedies and that Plaintiff fails to state a claim. Doc. 50. Defendant Sikes additionally argues that Plaintiff's claims should be dismissed on immunity grounds. Id.

## DISCUSSION

### I. Plaintiff's Motion for Leave to File Notice of Status Change

After the Motions to Dismiss became ripe, Plaintiff filed a "Motion for Leave to File Notice of Plaintiff's Status Change, Investigation Commencement, and Preservation of Rights, with Accompanying Declaration." Doc. 63. Plaintiff requests leave to file a declaration "regarding new developments that affect the current complaint and injunction requests before this court." Id. at 1. In the filing, Plaintiff explains that, after he filed the Complaint, he "was

transferred away from Jenkins Correctional Center to Hays State Prison, under questionable circumstances now under investigation." Id. at 3. Plaintiff's new allegations appear to be related entirely to his exhaustion arguments. I **GRANT** Plaintiff's Motion to the extent it is relevant to those arguments, and I have considered his new arguments as construed supplemental briefing on the issue of exhaustion.

## II. Defendants' Motions to Dismiss

I frame my analysis around Defendants Adams, Carter, Laricy, and Taylor's Motion to Dismiss. Doc. 35. Defendant Sikes's separately filed exhaustion arguments are substantively the same as the other Defendants' arguments. Doc. 50 at 2–6. Defendant Sikes's failure-to-state-a-claim arguments are also substantively the same. Id. at 13–19. And because those arguments are the same, my conclusions on both Motions are the same. Given my other recommendations, it is unnecessary to analyze Defendant Sikes's official capacity and immunity arguments. As discussed below, my conclusions on exhaustion and failure to state a claim dispose of every pending claim in the case.

### A. Failure to Exhaust

#### *1. Prison Litigation Reform Act's exhaustion requirements.*

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a

federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of

administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### *2. Standard of review for exhaustion.*

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 578 U.S. at 634 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu,

759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have

shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.")). However, if the issue of exhaustion is "intertwined with the merits of a claim that falls under the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate. Perttu v. Richards, 605 U.S. 460, 468 (2025).

***3. Applying Turner.***

Defendants argue that Plaintiff exhausted administrative remedies for some claims, but Plaintiff did not exhaust for all of the incidents described in the Complaint. Doc. 35 at 6. Defendants ask the Court to dismiss the unexhausted claims. Id.

*(a) The Georgia Department of Corrections' ("GDC") administrative remedies.*

Jenkins, where these claims arose, utilizes the GDC procedures for prisoner grievances. Doc. 35-1 at 1. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. Under SOP 227.02, the grievance procedure applies to "any condition, policy, procedure, or action or lack thereof that personally affects the Offender," excluding certain designated "[n]on-Grievable Issues." Id. at 4.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 8. Under Step 1, the inmate must submit a completed grievance form within 10 calendar days of "the date the Offender knew, or should have known, of the facts

giving rise to the grievance." Id. The initial grievance must concern "a single issue/incident." Id. Then, the inmate may appeal the decision to the GDC Central Office under two circumstances: (1) after the inmate receives the Warden's response to the grievance; or (2) after the time allotted for the Warden to decide has expired. Id. at 14. The SOP provides a 40-day period for the Warden's response to be given to the inmate, with the possibility provided for a 10-day extension. Id. at 11. An appeal must be filed within seven days of an inmate receiving the Warden's response. Id. at 14. If the Commissioner determines a grievance should have been accepted and processed, the grievance is returned for investigation, and the Warden/Superintendent has 15 calendar days from receipt to deliver the decision to the inmate. Id. at 15.

*(b) Some of Plaintiff's claims fail under Turner step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82.

Defendants allege in the Motion to Dismiss that Plaintiff submitted three grievances concerning the relevant incidents. Doc. 35 at 5. Plaintiff submitted Grievance Number 364725 on February 22, 2024. That grievance was about the February 21, 2024 State Bar of Georgia letter. Id. at 5. Plaintiff submitted Grievance Number 365770 on March 26, 2024, relating to the March 22, 2024 Georgia Supreme Court letter. Id. at 5–6. Finally, Plaintiff submitted Grievance Number 371295 on August 15, 2024, which concerned three letters: Plaintiff's letter to the White County, Georgia clerk of court; Plaintiff's letter from the General Services Administration; and one of Plaintiff's letters from Jennifer Hart. Id. at 6. Defendants also allege that Plaintiff submitted three additional grievances after he filed the Complaint. Id.

Defendants also contest Plaintiff's allegation that he was "intimidated" from exhausting administrative remedies. Id. at 11. Defendants argue that his allegations of intimidation do not excuse a failure to exhaust because, even if he was intimidated, he was not actually deterred from filing grievances. Id. at 11–12.

In his Response, Plaintiff does not contest Defendants' factual allegations. Plaintiff agrees that he filed "at least 3 formal grievances." Doc. 48 at 3. However, Plaintiff argues that his failure to exhaust for the incidents not specified in his grievances is excusable. Id. at 4. Plaintiff argues that, due to the number of incidents, it would be "not only impossible but unreasonable" to require him to grieve every one of the incidents. Id. at 5. Plaintiff asserts that he was "grieving the policy and practice (not just isolated incidents)." Id. Plaintiff also argues that further administrative remedies were unavailable because Defendants intimidated him by transferring other inmates in retaliation for filing lawsuits. Id. Finally, Plaintiff argues that, because the Court already conducted its frivolity screening, further review of exhaustion is improper. Id. at 6.

The parties' factual allegations do not conflict. Defendants argue that Plaintiff only grieved some of the incidents he filed claims about, and Plaintiff argues that he was excused from taking further steps beyond what he did. Plaintiff's allegations, even taken as true, cannot survive a motion to dismiss under the first prong of the Turner test.

Plaintiff argues that Defendants Sikes and Carter intimidated him against filing grievances because other inmates were previously transferred after filing lawsuits. Doc. 17 at 10. Plaintiff also argues that he was not required to exhaust every incident in the Complaint because the harm was "continuing" and was a "policy and practice." Doc. 48 at 4, 5. Finally, Plaintiff argues that complete exhaustion was unavailable because prison officials "failed to

make any changes which would have prevented" further incidents, making the grievance process "ineffective, unavailable, and abandoned." Id. at 4. Plaintiff also argues that, because the Court previously screened the Complaint under the PLRA, the Court "already addressed" exhaustion." Id. at 6.

Plaintiff's frivolity screening argument can be summarily dismissed. Failure to exhaust "is an affirmative defense under the PLRA" and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216. As a result, a pleading is not insulated from a later motion to dismiss on exhaustion grounds just because it survived frivolity review.

Plaintiff's arguments about intimidation fall squarely into Ross's third circumstance: "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 644. To establish unavailability based on intimidation or threats, a plaintiff must satisfy two conditions: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." Turner, 541 F.3d at 1085.

Plaintiff fails to satisfy the first condition for this Ross circumstance. Plaintiff does not contend that he was actually deterred from submitting any grievances and the factual allegations demonstrate that he was not actually deterred. Plaintiff submitted three grievances related to incidents alleged in the Complaint, his third grievance coming four months after the second grievance, during which time 11 separate incidents allegedly occurred. Doc. 17. Plaintiff continued to file additional grievances even after he filed the Complaint. Doc. 35-2; Doc. 35-3

at 1. Because Plaintiff was not actually deterred from utilizing the grievance process, his argument that he was intimidated against using it fails.

Plaintiff's arguments about a "continuing" violation are also unconvincing. The Eleventh Circuit has previously held that a prisoner plaintiff need not "file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance" if the applicable policy does not require it. Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1219 (11th Cir. 2010). However, in Parzyck, the continuing problem was chronic and severe back pain, and the court held that Florida Department of Corrections policies did not require the plaintiff to file repeated grievances related to denials of medical care in order to exhaust. Id. at 1218–19. The facts here are distinguishable because, while the complained-of incidents are numerous, each incident was discrete and required that prison officials examine them individually. Further, the SOP is clear that a grievance must complain of "a single issue/incident," meaning that if an inmate wants to complain of multiple discrete incidents (as here), the inmate must file individual grievances to properly exhaust.

Plaintiff's final argument—that officials failed to make changes that would have prevented future incidents—relates to Ross's first circumstance: when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 578 U.S. at 643. Plaintiff contends that the grievance process was ineffective because incidents continued to happen even after Grievance Number 364725 was approved. Doc. 48 at 4. Plaintiff has not, however, alleged any facts to show that officers were either unable or consistently unwilling to provide relief either to himself or to inmates generally. And the one instance Plaintiff points to shows that prison officials granted him relief. Ultimately, Plaintiff fails to show that Defendants were unable or unwilling to provide relief to inmates.

Because Plaintiff presents no valid basis why administrative remedies were unavailable to him, and Defendants' uncontroverted allegations show he did not exhaust all of his claims, any claims unrelated to Grievances 364725 (about the February 21, 2024 State Bar of Georgia letter), 365770 (about the March 22, 2024 Georgia Supreme Court letter), and 371295 (about letters from Plaintiff's mother, GSA, and the White County clerk of court) should be dismissed. I **RECOMMEND** the Court **DISMISS** these claims for failure to exhaust administrative remedies.

**B. Failure to State a Claim**

Plaintiff's remaining claims concern the following communications: the February 21, 2024 State Bar of Georgia letter; the March 22, 2024 Georgia Supreme Court letter; the August 13, 2024 GSA letter; an August 13, 2024 letter from Plaintiff's mother; and the August 14, 2024 White County Clerk of Court letter.[1] Defendants argue that Plaintiff has failed to allege facts to state any plausible claim for relief related to these incidents. Doc. 25 at 12.

Plaintiff, on the other hand, contends that Defendants are liable on a number of bases, including: the First Amendment; the Fourth Amendment; the Sixth Amendment; the Fourteenth Amendment; the Eighth Amendment; and state law emotional distress. Doc. 17 at 11.

***1. Standard of review.***

In considering a motion to dismiss based on Rule 12(b) of the Federal Rules of Civil Procedure, a court must determine whether a plaintiff's "factual allegations are enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

[1] Defendants do not contend that Plaintiff failed to exhaust claims concerning these other mail incidents.

defendant is liable for the misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S 544, 555 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). In making this determination, a court must construe the complaint in a light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002).

When evaluating a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir. 1986). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). As for pro se plaintiffs, courts liberally construe the litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).

***2. First Amendment claims.***

Plaintiff argues that Defendants violated the First Amendment because "mail is protected by the right of freedom of speech." Doc. 17 at 11. Plaintiff also argues that Defendants unconstitutionally prevented his access to the courts. Id.

In response, Defendants argue that Plaintiff has not alleged an access-to-courts claim. Specifically, Defendants assert that Plaintiff has not alleged any injury as a result of the purported violation. Doc. 35 at 14. Defendants also argue that Plaintiff's free speech claim fails because the mail in question was not "legal mail" and his allegations do not demonstrate a "pattern or practice" sufficient to chill speech. Id. at 16.

*(a) Plaintiff has not alleged a plausible access-to-courts claim.*

While prisoners have a constitutional right of access to courts, a prisoner-plaintiff only has standing to sue to vindicate that right if he can "show an actual injury." Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998). Because the right asserted is the right of access, "prison officials' actions which allegedly infringed an inmate's right of access to the courts must have frustrated or impeded the inmate's efforts to pursue a nonfrivolous legal claim." Id. The plaintiff must "provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Wilson v. Blankenship, 163 F.3d 1284, 1290–91 (11th Cir. 1998).

Plaintiff alleges that the February 21, 2024 letter from the State Bar of Georgia concerned a State Bar investigation into Plaintiff's prior attorney. Doc. 17 at 4–5. Plaintiff argues that Defendants withheld the letter for a week, "which prevented adequate time to research, study, and prepare the documents." Id. at 5. Plaintiff alleges that he is "unable to verify if the State Bar has accepted his rebuttal, and if the investigation is concluded or is pending still." Id. Plaintiff

alleges that the August 14, 2024 White County letter contained "certified copies of [his] case judgment and indictment." Id. at 9. Plaintiff does not explain in the Second Amended Complaint what the March 22, 2024 letter sent to the Supreme Court of Georgia was, nor does he provide any additional factual allegations about the GSA letter or the letter from his mother.

Plaintiff, in the Second Amended Complaint, does not plead a plausible access-to-courts claim. Taking Plaintiff's allegations about the State Bar of Georgia letter as true, Plaintiff does not allege that the one-week delay in receipt of the letter actually prevented him from pursuing any legal claim through any act of Defendants. Plaintiff expressly states that he is unaware what the current status of his prior attorney's disciplinary proceedings is. Id. at 5. Plaintiff's allegations about the Supreme Court of Georgia, White County, the GSA, and his mother are all conclusory and he fails to identify any underlying legal claim or any actual deterrence. Id. at 5–9. Plaintiff provides additional detail about these incidents in his Response brief, but briefing in response to a motion to dismiss cannot cure deficiencies in a Complaint. See Jallali v. Nova Se. Univ., Inc., 486 F. App'x 765, 767 (11th Cir. 2012) ("[A] party cannot amend a complaint by attaching documents to a response to a motion to dismiss.") (citing Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007)). And even if Plaintiff had properly included the statements in his Response in his Second Amended Complaint, the allegations still would not establish a plausible state an access-to-courts claim because the allegations still do not demonstrate that any Defendant actually frustrated an underlying legal claim. Plaintiff does not allege, for example, that he filed a habeas petition or criminal appeal that was dismissed or that he filed a motion that was denied. As a result, Plaintiff has not pleaded an actual injury and has not stated an access-to-courts claim.

*(b) Plaintiff has not alleged a plausible free speech claim.*

The First Amendment protects free speech, including the "right to send and receive mail." Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 427 (1993)). And a prisoner retains "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Id. (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)). Courts therefore recognize that a prisoner has a protected First Amendment right to communicate with his attorneys by mail. See id. at 1333–34 (finding that an inmate's use of the mail to communicate confidentially with attorneys is not inconsistent with prisoner status or with legitimate penological objectives). When, as here, prison officials allegedly opened mail outside the inmate's presence, the inmate must show "a pattern or practice" of opening the inmate's "attorney mail outside his presence." Id. at 1334.

Defendants argue that, of the letters at issue, only the Georgia Supreme Court letter and the White County letter could possibly be construed as legal mail because they "involve the courts." Doc. 35 at 15. Defendants also argue that, nonetheless, neither one is legal mail. As for the White County letter, Defendants explain that the letter was not labeled as legal mail and the documents in the letter were matters of public record, not confidential communications. Regarding the Georgia Supreme Court letter, Defendants state that the letter was "processed as incoming non-legal mail because the return address in the letter . . . was the address for Jenkins Correctional Facility and obviously sent out by an inmate." Id. at 16. Defendants also argue that "even if policy required staff not to open [the Georgia Supreme Court letter], a single incident of opening legal mail is not a 'pattern or practice' sufficient to interfere or chill a prisoner's speech." Id.

Plaintiff argues in response that he alleged "over 20 times of separate incidents" sufficient to show a "pattern or practice." Doc. 48 at 6.

Of the exhausted claims, Plaintiff has not shown that any of the underlying communications—i.e., State Bar of Georgia letter, the GSA letter, and the letter from Plaintiff's mother—involve legal mail. None are from an attorney (much less Plaintiff's attorney) and there is no indication that any of this mail was properly marked as legal mail. See Christmas v. Nabors, 76 F.4th 1320, 1328 (11th Cir. 2023) ("A simple rule has governed prison mail procedures in our Circuit for nearly 50 years: a prison official may not open an inmate's *properly marked* legal mail outside of his presence.") (emphasis added) (citation omitted). Plaintiff also fails to allege, or even suggest, in his Second Amended Complaint that the White County Clerk of Court letter was identified as "legal mail" in any way.

The Georgia Supreme Court letter presents a different issue, as Plaintiff alleges that it was a legal letter sent directly from him to a court. Doc. 17 at 5. The fact that it was an outgoing letter that was returned is irrelevant because there is "no justification whatsoever for opening or reading correspondence addressed to the courts." Taylor v. Sterrett, 532 F.2d 462, 473–74 (5th Cir. 1976). Because prison officials opened a letter addressed from Plaintiff to the Georgia Supreme Court, this incident represents a potential First Amendment violation.

However, even assuming that the underlying communications (including the Georgia Supreme Court letter) constitute "legal mail," Plaintiff does not adequately allege a pattern or practice of prison officials opening legal mail outside of his presence. Even if the White County letter constitutes legal mail, Plaintiff alleges that that the letter was marked "opened in error." Doc. 17 at 9. The only other opened piece of legal mail was the Georgia Supreme Court letter. But an allegation of two incidents five months apart, at least one of which appeared to be

accidental, does not constitute a pattern or practice sufficient to satisfy the necessary elements of a First Amendment free speech claim. See Gibson v. Edwards, No. 5:17-cv-423, 2018 WL 6985122, at *7 (M.D. Ga. Nov. 29, 2018) ("[T]he inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail."), report and recommendation adopted, 2019 WL 148709 (M.D. Ga. Jan. 09, 2019). Because Plaintiff does not plausibly allege a pattern and practice of opening legal mail outside of his presence, he has not stated a First Amendment free speech claim.

### *2. Fourth Amendment claims.*

Plaintiff alleges that Defendants violated the Fourth Amendment "by opening and copying Plaintiff's legal mail outside his presence, failing to deliver all the documents without pages missing." Doc. 17 at 11. Plaintiff characterizes this conduct as "actions taken without letter of censorship or probable cause." Id. Defendants argue Plaintiff does not state a Fourth Amendment claim because Plaintiff has a diminished expectation of privacy in prison and his claim is more properly assessed under the First Amendment. Doc. 35 at 17–18.

Prisoners have a severely curtailed expectation of privacy, and "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984); see United States v. Vernon, 262 F. App'x 157, 158 (11th Cir. 2008) (finding a prisoner had no legitimate expectation of privacy in the contents of notepads he kept in his cell). Even if Plaintiff did have an expectation of privacy, courts routinely decline to analyze mail interference claims under the Fourth Amendment. See Rix v. Wells, No. 8:08-CV-1728, 2008 WL 4279661, at *2 (M.D. Fla. Sep. 16, 2008) ("To the extent Plaintiff claims Defendants violated his constitutional rights by opening his legal mail, his claim is properly analyzed under the First and Fourteenth Amendments."); Kahl-Winter v. Thomas,

Case No. 5:21-cv-631, 2023 WL 2527011, at *4 (M.D. Fla. Mar. 15, 2023) (finding that inmates do not have a reasonable expectation of privacy in searches of legal mail and collecting cases). Because Plaintiff has a significantly diminished expectation of privacy, and Plaintiff's claim is properly assessed under the First Amendment, he fails to state a Fourth Amendment claim.

### *3. Sixth Amendment claims.*

Plaintiff alleges that Defendants violated the Sixth Amendment by "hindering" and "delaying his legal mail. Doc. 17 at 11. Defendants argue the Sixth Amendment only applies to criminal proceedings and, because Plaintiff is incarcerated with no ongoing criminal proceeding, he cannot state any Sixth Amendment claim. Doc. 35 at 18.

The Sixth Amendment only applies to criminal proceedings. Barbour v. Haley, 471 F.3d 1222, 1231 (11th Cir. 2006) (citing Wolff v. McDonnell, 418 U.S. 539, 576 (1974)). It does not apply in any civil context, including post-conviction habeas proceedings. Id. (citing Pennsylvania v. Finley, 481 U.S. 551, 556–57 (1987)). Plaintiff does not allege that he has an active criminal matter that would implicate the Sixth Amendment at all, and he also does not allege that any of the letters discussed in his exhausted claims have anything to do with his right to counsel. Therefore, the Sixth Amendment is inapplicable to these facts.

### *4. Eighth Amendment claims.*

Plaintiff alleges that Defendants violated the Eighth Amendment in a "direct abuse of authority" by "forcing the plaintiff to fear being transferred to another facility." Doc. 17 at 12. Defendants argue that Plaintiff's Eighth Amendment claim fails because he does not allege that any Defendant had the requisite intent to punish, acted wantonly, or inflicted any pain. Doc. 35 at 19–20.

The only allegations Plaintiff makes in the Second Amended Complaint about fear of transfer are those he makes in relation to his exhaustion arguments. Doc. 17 at 10. But even if he tied his allegations to an independent claim, he alleges at most a subjective belief that he might be transferred. Plaintiff appears to base that belief on the fact that other inmates were previously transferred for filing lawsuits. Id. This sort of subjective belief cannot support an Eighth Amendment claim. See Conner v. Stitcher, 801 F.2d 1266 (11th Cir. 1986) (finding no § 1983 liability when the plaintiffs' injury "was based on their subjective belief that they were in danger, when in fact they were not.").

***5. Fourteenth Amendment claims.***

Plaintiff asserts a Fourteenth Amendment due process claim, alleging that Defendants "fail[ed] to provide a letter of censorship on mail, violated their own standard operating procedures, [and] violated federal laws and postal regulations without proper due process." Doc. 17 at 12. Defendants argue that Plaintiff fails to state a due process claim because he does not sufficiently allege any deprivation of a constitutionally protected interest. Doc. 25 at 19.

A procedural due process claim requires a showing of: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006) (citation omitted). Plaintiff has not alleged facts to support any of these elements. Therefore, his Fourteenth Amendment claim also fails.

***6. Emotional distress claims.***[2]

Plaintiff lastly argues that Defendants "contributed to the plaintiff[']s emotional distress," resulting in "anxiety, depression, feelings of helplessness, and loss." Doc. 17 at 13. Defendants

---

[2] Plaintiff appears to clarify that he did not intend to assert a state-law emotional distress claim but, instead, attempted to assert that he experienced emotional distress as an injury from the alleged

argue that Plaintiff fails to allege any element of an emotional distress claim in his Second Amended Complaint. Doc. 35 at 20.

In Georgia, intentional infliction of emotional distress has four elements: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress must be severe." Mangrum v. Republic Indus., 260 F. Supp. 2d 1229, 1256 (N.D. Ga. 2003). Plaintiff has not alleged facts supporting any of these elements, and, at most, Plaintiff merely alleges that he experienced emotional distress. These claims should be dismissed.

Because each of Plaintiff's claims suffers a fatal deficiency (either failure to exhaust or failure to state a claim), I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss.

## III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United

constitutional violations. Doc. 57 at 5. I accept Plaintiff's representation and conclude that Plaintiff did not assert a state-law claim. Nonetheless, for completeness, I analyze whether Plaintiff's allegations would support such a claim, given Defendants' arguments.

States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, I **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **GRANT** Plaintiff's Motion for Leave to File Notice of Status Change. Doc. 63. I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss, docs. 35, 50, and **DISMISS** Plaintiff's Amended Complaint in its entirety. Because I have recommended dismissal of all of Plaintiff's claims, I **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 17th day of August, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA